STATE OF NORTH CAROLINA
v.
CARLTON WENDELL BRADDY, Defendant.
No. COA08-333
Court of Appeals of North Carolina
Filed February 17, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Tina A. Krasner, for the State.
J. Clark Fischer for defendant-appellant.
GEER, Judge.
Defendant Carlton Wendell Braddy appeals from his conviction of attempted discharge of a firearm into occupied property and assault with a deadly weapon with intent to kill inflicting serious injury. In his sole argument on appeal, defendant contends that the trial court erred in admitting testimony that a prior threat to kill the victim was made seriously and that the witness believed defendant would actually follow through on his threat. Defendant has, however, failed to demonstrate that admission of this testimony prejudiced him. Given the other evidence in the record, we conclude that there is no reasonable possibility that the jury would have reached a different verdict in the absence of the challenged testimony.

Facts
At defendant's trial, the evidence tended to show the following facts. In the afternoon of 3 April 2004, Ishmael Graham drove his automobile to the Lumbee Tire Company on Martin Luther King, Jr. Drive in Maxton, North Carolina because he was having problems with the car's right rear tire. Mr. Graham backed his car up to the garage door and got out. Clarence Woods, the owner of the garage, jacked up the car and began taking the tires off when he heard a pop. Mr. Woods stood up, looked around, and heard more popping noises coming from the street. He then saw a dark blue Ford Bronco in the street. Mr. Woods ran into the garage, realizing the popping noises were gunfire, but still recognized defendant as the driver and sole occupant of the Bronco. The Bronco then drove off, and Mr. Woods saw Mr. Graham lying on the concrete in front of the garage with "[l]ots of blood" coming from his head. Mr. Woods never saw a gun, but heard three or four gunshots.
Shortly before the shooting, Samuel Smith drove past the Lumbee Tire Company, and his passenger saw Mr. Graham flagging them down. Mr. Smith noticed defendant driving a blue Bronco and turned around and got behind the Bronco. Defendant and Mr. Smith both stopped their vehicles in front of the Lumbee Tire Company. As Mr. Graham started walking toward Mr. Smith's car, Mr. Smith saw defendant lean over and shoot Mr. Graham from inside the Bronco. When Mr. Graham fell, defendant sped off in the Bronco. Four .40 caliber shell casings were recovered from the parking lot of the Lumbee Tire Company. Police officers quickly located a dark blue Ford Bronco owned by Carol Bethea, defendant's mother, at 133 Croom Road, the address that the officers had for defendant. The police obtained Ms. Bethea's consent to search the Bronco and found a receipt from Extreme Soundz and a jacket in the back seat, both of which had defendant's name on them.
Mr. Graham suffered a gunshot wound to his forehead. He underwent numerous surgeries, and had to obtain speech and physical therapy. As a result of his head wound, Mr. Graham currently has problems with his memory and suffers from seizures for which he takes medication.
Defendant was indicted for discharging a firearm into occupied property and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was found guilty of attempted discharge of a firearm into occupied property and of the assault charge. The trial court sentenced defendant to a single presumptive-range term of 116 to 149 months imprisonment. Defendant timely appealed to this Court.

Discussion
Defendant's sole argument on appeal is that the trial court erred in admitting a witness' opinion regarding defendant's demeanor and state of mind. Opinion testimony of non-expert witnesses "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.R. Evid. 701. Generally, however, "a witness may not give his opinion of another person's intention on a particular occasion." State v. McElroy, 326 N.C. 752, 758, 392 S.E.2d 67, 70 (1990).
At trial, the State elicited testimony from Geraldine McLaurin regarding a conversation, prior to the shooting, that she had with defendant about an altercation between Mr. Graham and defendant's mother:
[PROSECUTOR]: Okay. Mrs. McLaurin, tell usas a result of your saying to Carlton Braddy that it wouldn't be worth it for him to do anything to get in trouble, what did he say
[DEFENSE COUNSEL]: Objection to the leading, judge.
THE COURT: Overruled.
[PROSECUTOR]: What did he say in response to your saying that to him? Tell us what he said.
[MS. MCLAURIN]: See, that is the wordhe said in other wordsI don't know whether he said people or friends told him that I wouldn't take that. I wouldn't let nolet him get away with it.
I said, "People want you to get in trouble, you know. That is what they will do all this talking to you to try to keep you stirred up to get you in trouble" 
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled. Continue.
[MS. MCLAURIN]: But he said, "But I am going to get him." He said, "But I am going to kill him. I am going to get him if it be the last thing I do. I am going to kill him."
I said. "Well, it won't do you no good." I said, "And it won't do your mother no good."And I said, "Don't do it." I was begging him not to do it. "Don't do it. It is not worth it."
[PROSECUTOR]: And Mrs. McLaurin, during the time that you were talking with Carlton Braddy, were you able to reach him or reason with him?
[MS. MCLAURIN]: He talked reasonable, but he was serious. But he was respectable
[DEFENSE COUNSEL]: Objection as to how he was, your Honor.
THE COURT: Overruled. You may continue, ma'am.
[PROSECUTOR]: And during the time he talked with you, was Carlton Braddy calm or angry about talking about Ishmael Graham?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
[MS. MCLAURIN]: He was serious. You know, it was a serious conversation that I left knowing that he meant what he said. He was going to do it.
[DEFENSE COUNSEL]: Objection, your Honor, to she [sic] saying what she left with.
THE COURT: Overruled.
[DEFENSE COUNSEL]: Motion to strike.
THE COURT: Denied.
Defendant argues that Ms. McLaurin's opinions that (1) defendant "was serious" and (2) he "was going to do it" were irrelevant, represented her personal speculation of defendant's intent, and were unduly prejudicial to defendant.
Even assuming arguendo that the trial court erred in admitting these two portions of Ms. McLaurin's testimony, defendant has failed to establish prejudice. If a trial court commits error in admitting evidence at trial, "relief will not ordinarily be granted absent a showing of prejudice." Id. at 756, 392 S.E.2d at 69. To show the requisite prejudice, a defendant must show "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007).
As defendant acknowledges, the testimony was admitted to prove defendant's intent to kill. Defendant has not challenged on appeal Ms. McLaurin's testimony that defendant promised, "I am going to get him if it be the last thing I do. I am going to kill him." In addition, the State presented evidence about defendant's motive to assault Mr. Graham and about a prior occasion when defendant shot at Mr. Graham. There was extensive evidence identifying defendant as the shooter who struck Mr. Graham in the head. See State v. Cromartie, 177 N.C. App. 73, 77, 627 S.E.2d 677, 680 ("Where the defendant points a gun at the victim and pulls the trigger, this constitutes evidence from which intent to kill may be inferred."), disc. review denied, 360 N.C. 539, 634 S.E.2d 538 (2006).
In light of the substantial evidence presented at trial of defendant's intent to kill and his guilt, we hold there is no reasonable possibility that the jury would have reached a different verdict had the trial court excluded Ms. McLaurin's testimony that defendant was serious, and she "left knowing that [defendant] meantwhat he said. He was going to do it." Accordingly, we hold defendant received a trial free of prejudicial error.
No error.
Judges WYNN and ELMORE concur.
Report per Rule 30(e).